ROBINSON, ADMINISTRATOR OF ROBINSON, *v.*
UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 335.  Argued March 16, 1923.—Decided April 9, 1923.

1. Stipulations in construction contracts obliging the contractor to
   pay liquidated damages for each day's delay, are appropriate
   means of inducing due performance and of affording compensation
   in case of failure to perform, and are to be given effect according
   to their terms.  P. 488.
2. Where a public building contract obliged the contractor to pay
   liquidated damages for each day's delay not caused by the Gov-
   ernment, and delays were attributable to both parties, *held* that
   the Government was entitled to the damages for the part of the
   delay specifically found by the Court of Claims to have been due
   wholly to the fault of the contractor.  *Id.*
3. Where defects in a building result partly from the character of
   materials expressly required by the building contract and partly
   from the fault of the contractor, the fact that the contractor
   pointed out the unsuitability of the material specified and suggested
   a substitute, after the contract was made, does not relieve him of
   the obligation to repair the defects under his guaranty of the con-
   dition of the work for a stated period after its acceptance.  P. 489.

57 Ct. Clms. 7, affirmed.

APPEAL from a judgment of the Court of Claims sus-
taining, in part only, the appellant's claim for moneys due
under a building contract.

*Mr. Chas. H. Merillat,* with whom *Mr. Chas. J. Kappler*
was on the brief, for appellant.

*Mr. Blackburn Esterline,* Assistant to the Solicitor Gen-
eral, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the
Court.

On August 30, 1905, claimant's intestate entered into a
contract with the United States to instal the interior fin-

ish in the custom house building then being constructed
in New York City pursuant to Act of March 2, 1899,
c. 337, 30 Stat. 969. The contract price was $1,037,-
281.69; and the time for completion of the work, October
15, 1906. Before it had been completed, but after that
date, a supplemental agreement was made, which pro-
vided for additional work; increased the contract price
$200,041.01; and extended the time for completion to
June 1, 1907. The work was not completed until 121
days after that date. The Government insisted that only
12 days of this delay were chargeable to it; and that the
contractor was liable in liquidated damages for $420 for
each of the remaining 109 days' delay. It, therefore, de-
ducted $45,780 from the amount otherwise payable to the
contractor.

To recover that sum (and others) the contractor
brought this suit in the Court of Claims. He contended
that, since the Government had caused some of the delay,
the provision for liquidated damages became wholly in-
applicable and was unenforceable; and that, since the
Government had failed to prove actual damage, it was not
entitled to any damages whatsoever. The court found
that of the 121 days of delay, only 61 days were charge-
able to the contractor; and that the remainder were
caused by the Government, after the date of the supple-
mental contract. It accordingly gave the claimant judg-
ment (among other things) for $20,160, being that part
of the amount withheld which represented the delay in
excess of 61 days. 57 Ct. Clms. 7. The case is here on
claimant's appeal. Whether on these facts the provision
for liquidated damages governs is the main question for
decision.

The original contract provided that the contractor
" shall be allowed one day, additional to the time herein
stated, for each and every day of . . . delay [that may
be caused by the Government] "; " that no claim shall be

made or allowed to . . . [the contractor] for any dam-
ages which may arise out of any delay caused by . . .
[the Government] "; and that the contractor shall pay
$420 for each and every day's delay not caused by the
United States. The supplemental contract provided that
the extension then granted was in lieu of all additional
time which had accrued to that date " on account of de-
lays by the Government." The construction of the con-
tract and the findings of fact are clear. If the provision
for liquidated damages is not to govern, it must be either
because, as matter of public policy, courts will not, under
the circumstances, give it effect (even as a defense) or,
because in spite of the explicit finding, no day's delay can,
as matter of law, be chargeable to the contractor, where
the Government has caused some delay. Neither position
is tenable.

The provision is not against public policy. The law
required that some provision for liquidated damages be
inserted. Act of June 6, 1902, c. 1036, § 21, 32 Stat. 310,
326. In construction contracts a provision giving liqui-
dated damages for each day's delay is an appropriate
means of inducing due performance, or of giving compen-
sation, in case of failure to perform; and courts give it
effect in accordance with its terms, *Sun Printing & Pub-
lishing Association* v. *Moore*, 183 U. S. 642, 673, 674;
*Wise* v. *United States*, 249 U. S. 361; *J. E. Hathaway &
Co.* v. *United States*, 249 U. S. 460, 464. The fact that
the Government's action caused some of the delay, pre-
sents no legal ground for denying it compensation for loss
suffered wholly through the fault of the contractor. Since
the contractor agreed to pay at a specified rate for each
day's delay not caused by the Government, it was clearly
the intention that it should pay for some days' delay at
that rate, even if it were relieved from paying for other
days, because of the Government's action. If it had ap-
peared that the first 61 days' delay had been due wholly

to the contractor's fault, and the Government had caused the last 60 days' delay, there could hardly be a contention that the provision for liquidated damages should not apply. Here the fault of the respective parties was not so clearly distributed in time; and it may have been difficult to determine, as a matter of fact, how much of the delay was attributable to each. But the Court of Claims has done so in this case. Its findings are specific and conclusive. Compare *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105, 121; *Carnegie Steel Co.* v. *United States,* 240 U. S. 156, 163, 164. The case is wholly unlike *United States* v. *United Engineering Co.,* 234 U. S. 236, upon which claimant relies. The question there was one of construction. The lower court found as a fact that, but for the Government's action, the work would have been completed within the contract period; and this Court construed the provision for liquidated damages as not applicable to such a case. Here the question is not properly one of construction.

It is also assigned as error that the court sustained a deduction by the Government from the contract price of the amount paid by it for certain repairs. The contract contained a guarantee by the contractor of the condition of the work for one year after acceptance. The specifications provided for window sashes of solid oak. After the contract had been signed, and before putting in the windows, the contractor called the architect's attention to the fact that solid oak is not well suited for a damp climate and locality, like that of lower New York City; and he suggested a modification of the specifications to avoid warping. The suggestion was not accepted. By reason, in part, of warping which occurred within a year after acceptance of the work, extensive repairs became necessary. He was requested by the Government to make the repairs, but refused to do so. Then the Government had them made by others. The Court of Claims found that

owing partly to the fact that oak is not suitable to the climate and partly " to the further facts that the materials of some of the sash were not of the best quality, nor thoroughly seasoned, and that the workmanship in their construction and installation was in some instances not of first-class character, there occurred . . . much warping . . . which required extensive repairs of an expensive character."

The contractor contends that the Government's refusal to adopt the modification proposed relieved him from the obligation under the guarantee. The contention is unsound. He entered into a contract plain and comprehensive in terms. There was no finding of mutual mistake, or of fraud, misrepresentation or concealment on the part of the Government or any of its officers or employees. Under such circumstances, the contractor cannot be relieved from an obligation deliberately assumed. *Wells Brothers Co.* v. *United States,* 254 U. S. 83; *MacArthur Brothers Co.* v. *United States,* 258 U. S. 6. If the warping had been caused entirely by the adoption of wood unsuitable to the climate, it may be that, as a matter of construction, the guarantee would not extend thereto. But the findings do not present such a case. The case is wholly unlike *United States* v. *Spearin,* 248 U. S. 132; *United States* v. *Atlantic Dredging Co.,* 253 U. S. 1; *United States* v. *Smith,* 256 U. S. 11.

*Affirmed.*